AB:ADW
F. #2019R01488

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (917) 225-4249, THAT IS STORED AT PREMISES CONTROLLED BY AT&T CORPORATION | TO BE FILED UNDER SEAL<br><br>SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION<br><br>Case No. 20-MC-180 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Thomas Callahan, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (917) 225-4249 ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T Corporation, a wireless telephone service provider with operations in North Palm Beach, Florida (the "Provider"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the United States Drug Enforcement Administration ("DEA") and have been since approximately October 2018. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. In my capacity as a Special Agent, I have participated in investigations of narcotics and money laundering activities, including surveillance and the execution of search warrants and the monitoring of electronic tracking devices. I have also received training on the uses and capabilities of cellular telephones in connection with criminal activity.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 (the "SUBJECT OFFENSES") have been committed by HUIMING FENG and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

5. Based on the facts set forth below, I believe that location information about the SUBJECT PHONE for the period from October 27, 2019 to October 28, 2019 will provide

evidence regarding HUIMING FENG's involvement in narcotics distribution in Queens, New York.

6. On or about October 28, 2019, members of law enforcement, including myself, were surveilling the activities of an individual suspected of engaging in narcotics trafficking ("Individual-1"). Law enforcement observed Individual-1 leave his home and drive to a self-storage facility in Queens, New York (the "FIRST STORAGE FACILITY"). While there, law enforcement observed Individual-1 meet with another person ("Individual-2").

7. Individual-1 and Individual-2 appeared to canvas the area by driving and walking around the perimeter of the area and peering into parked vehicles to see if anyone was inside.

8. Individual-1 and Individual-2 then drove to and parked their respective cars on a nearby street. There, HUIMING FENG and an individual later identified WEIBIN LIANG arrived in a pickup truck and spoke with Individual-1 and Individual-2 for some time.

9. Together, Individual-1, Individual-2, HUIMING FENG and WEIBIN LIANG then went to the loading dock of another nearby self-storage facility also in Queens, New York (the "SECOND STORAGE FACILITY"), where they met an individual later identified as BINBU FENG. They were observed retrieving several large black plastic bags from the SECOND STORAGE FACILITY. Several of them loaded the bags into the back of a mini-van.

10. BINBU FENG drove the mini-van away from the SECOND STORAGE FACILITY. Law enforcement conducted a traffic stop of the mini-van, and BINBU FENG

3

consented to a search of both the mini-van and any closed containers within it. Law enforcement then searched the mini-van, found several large black plastic bags, and opened the bags, revealing large quantities of marijuana. Law enforcement then arrested BINBU FENG.

11. Other members of law enforcement continued to surveil the SECOND STORAGE FACILITY while BINBU FENG was being arrested. Law enforcement observed WEIBIN LIANG and at least one other person loading large boxes into the back of the pickup truck. HUIMING FENG (the driver) and WEIBIN LIANG (a passenger) rode away from the SECOND STORAGE FACILITY in the truck. Law enforcement conducted a traffic stop of the truck, and HUIMING FENG consented to a search of both the truck and any closed containers within it. Law enforcement found and opened the boxes, which contained large quantities of marijuana. They then arrested HUIMING FENG and LIANG.

12. Law enforcement seized one or more cellular devices from HUIMING FENG incident to his arrest on October 28, 2019. Following his arrest, HUIMING FENG told law enforcement that (917) 225-4249 was his cell phone number. Records obtained from the Provider show that HUIMING FENG made and/or received several calls using this number on October 28, 2019. Therefore, there is reason to believe that the SUBJECT PHONE is amongst the device(s) seized from HUIMING FENG incident to his arrest.

13. Based on these facts, as well as my training, experience and involvement in this investigation, I believe that location data for the SUBJECT PHONE for the period from October 27, 2019 to October 28, 2019 will provide evidence of HUIMING FENG's involvement in the SUBJECT OFFENSES.

4

14. In my training and experience, I have learned that the Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15. Based on my training and experience, I know that the Provider can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as the Provider typically collect and retain cell-site data in their normal course of business.

16. Based on my training and experience, I know that wireless providers such as the Provider typically collect and retain information about their subscribers in their normal course of business.. This information can include basic personal information about the subscriber, such as name, address and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Provider typically collect and retain information about their

5

subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

18. I further request that the Court direct the Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody or control. Because the warrant will be served on the Provider, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation,

including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates and flee from prosecution.

Respectfully submitted,

Thomas Callahan, Jr.
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me on  1/23  , 2020

Honorable Cheryl L. Pollak
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (917) 225-4249 (the "Account"), that are stored at premises controlled by AT&T Corporation, a wireless telephone service provider with operations in North Palm Beach, Florida.

# ATTACHMENT B

## Particular Things to Be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period October 27, 2019 to October 28, 2019:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI") or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration IP address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. The date and time of the communication, the method of the communication and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

**II.   Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841 and 846 involving HUIMING FENG during the time period specified in Section I.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T, and they were made by AT&T as a regular practice; and

    b.    such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by AT&T, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

| | |
|---|---|
| Date | Signature |

2